Okay, we'll call our last case, 25-8011, JBX v. Island. We have pleased the court. My name is Carrie Hartman and I represent the appellant in this matter, Island LLC. Island is here today asking for this court to reverse various rulings which ultimately culminated in the district court erroneously permitting registration of the marks JBX v. Island and v. Island JBX. Importantly, this is an appeal from a trademark trial and appeal board registration proceeding with the U.S. Patent and Trademark Office. It is not a trademark infringement case and I think that's an important distinction that the district court missed here in this case. Counsel, I have a really threshold question. So in your brief and in the way that you litigated this before the district court, you framed the error as both a legal problem, in other words, that in 1071b1 proceedings you're confined to the four corners of the applications and registrations and that was a legal mistake that the district court made. That was one argument. You also framed it as an evidentiary problem, that this evidence is irrelevant, it should have been excluded under the federal rules of evidence. And my question, very threshold question is, is there a right way to think about the error here? Is it a legal error, which would be sort of a de novo review? Is it an evidentiary problem, which has a different standard of review? You could speak to that. Thank you. Yes, I think it's ultimately is a legal error because when we're looking at the likelihood of confusion factors, the court has to know what it's allowed to look at and what it's allowed to consider when ruling on those likelihood of confusion factors. And I think in this case, as you said, the district court went outside of the registrations and applications in its consideration of various of the likelihood of confusion factors. And that's the legal error that really is the core of the appeal. So is it your position that they, that consideration of the outside evidence was inappropriate as to all factors? No. So and to be clear, what we're arguing here is that evidence of actual marketplace use of the marks is, was what should not have been considered here. And that is particularly relevant in terms of the district court's decision on the factors for similarity of the marks, similarity of the products and the manner of marketing and the trade channels, as well as the degree of care that's exercised by the consumer. Ultimately the district court considered other evidence outside of the applications and registrations in considering the strength of the marks. And we aren't challenging that. Obviously it considered various third party usages and the enforcement efforts that Eileen took when ruling on the strength of the mark. So it's really just those marks, or sorry, those factors that I just noted. So on the consumer care factor, the district court considered your witness, the testimony of your witness, right? Yeah. You're not, are you saying that that was improper? Admittedly, that is, that is a difficult position. I think that, I think it's tough that the witness did testify to that, but I think ultimately it was, it was legal error. Well, it would be invited error at that point. I mean, I think that if you offered the witness and under your reading of the rule that you would like us to adopt, her testimony would have been inadmissible because of the rule in 1071B proceedings and the district court considered it. That doesn't seem to be something that we would fault the district court for. Do you agree? I think that the weight that the district court could have placed on that testimony, that at least in that circumstance, that it should have been less weight, especially given the nature of these proceedings and that it's a registration proceeding and that we really should just be looking at the applications and the registrations, at least with respect to those factors. And I have a similar question on the similarity of the goods and manner of marketing. District court's ruling there favored you, favored your client, and I think your argument on appeal is because the court went outside the four corners, your position is it would have weighed it more heavily in your favor. Is that, is that correct? Yes, so I think when you look at the district court's order and the way it explained its ruling with some of the specific factors, it used language as it's slightly in favor of Island or it's not overwhelmingly in favor of Island. And when it was erroneously considering the information outside of the applications and the registrations, I think if it hadn't have done that, those factors would have tipped more in favor of Island given that nature. But I also think because this is a factor test, I mean, any, any error on any of the factors, it infects the entire analysis here. And I think that the analysis has to be redone because of that legal error. And this court can set aside any of those findings based on that legal error. Well, you're asking us to review it de novo, aren't you? Yes. So can't, can't we look at it and say, you know what, you're right about some of these things. We're going to throw that out and evaluate it to see who it favors. Yes, yes. I think this court can do that. I think it's, I believe it was the, the Sabinza case that we cited in our brief. I may be totally butchering the pronunciation of that case name, but in that case, the circuit court basically did kind of redo the consideration of the likelihood of confusion factors. So I think that this court can do that. But another path to relief is for this court just to provide the specific confines for what the district court can consider and to reverse and remand with specific instructions for the district court. So I think there's ultimately a couple of different paths that this court could take here. Do you agree that the standard for harmlessness, I guess, if, for lack of a better word, that applies here is different if we understand this as a, as an error of law versus an evidentiary error. And, and what I've been struggling with is how to, to think about the error, right? So assuming the district court did what you say and went outside the four corners. But when we review his overall balancing, we can't come away from that and say that really he relied on this outside evidence and that's what compelled his conclusion. What, what are we supposed to do with that? I mean, what is the standard that applies? If it's an evidentiary ruling, we look at whether it would have a substantial influence on the outcome. You're saying that's not the standard. So is the standard more of the Pullman standard case that it's, if the record permits only one resolution of the factual issue, is that the standard for remand? Yes, that, that is what we are arguing here. I think, as you said, we, because it's hard to say what the district court would have done and, and it's not clear that there's only one path here, that, that it should just be at the very least remanded for the district court to reconsider the factors with the, with the proper legal considerations. But, but why isn't it fair to say that there's only one path here? I mean, I, I think that if you go factor by factor, you know, we, we end up in a place where we can assess, well, for example, we talked about consumer care and that was your witness and what are we to do with that? We talked about similarity of the marks and so forth. But, but at the end of the day, the district court really only relied on the objectionable outside evidence in a really, really limited way, right? I mean, with respect to the specific marks that are before us. I would say that, I guess I wouldn't say that it was totally limited. I would say that it was limited in the sense of the, the specific factors that it impacted. But I think there's, there's some other things that we need to consider here as well, too, that we maybe haven't quite touched upon yet in, in this argument. The decision regarding JBX, the inclusion of JBX, and, and that is also inconsistent in the sense that the district court is according additional weight to the inclusion of JBX on the marks, but it's also saying that it's not a housemark. And a lot of the analysis that the district court did is citing the housemark cases. And that just, I don't think that that can really be reconciled here. But that's a different error or a different allegation of error, right? That's not the same as the, your principal argument concerning the, the quote unquote outside evidence, right? Yes. Yes. That's a different argument. I would agree with that. Well, it seems that the district court's overall likelihood confusion, likelihood of confusion determination on the marks that are before us, it said examining the matter as a whole, the court determines A, the inclusion of JBX is distinguishing. And then the fact that JBX's products primarily target a more specific consumer, the moms and kids, and then the three lesser factors weighing in JBX's favor combined together to outweigh. Okay, that's, that was his ultimate conclusion. And it seems there's only one part of that that's kind of corrupted by the outside evidence. So why shouldn't we say that, well, there may have been an error here, but on the whole, it really doesn't seem like it mattered. Well, I think because we, we don't know what the district court would have done. And that's why I think that reverse and remand for reconsideration of the factors is at the very least the proper course of action here. But I think, as you noted, it, it, it impacted regarding the, the consumers that were targeted in terms of the mother and children, but it also impacted all of those three factors that I noted previously. And I think when you take all of that together, it, I mean, it's a factor test and, and none of the factors are dispositive. So I think that it has to be reconsidered and reexamined based on the proper legal confines. So this, so your argument seems to assume a de novo review, which is contested. If we, if we reviewed this for clear error, it would be a much, much different case, wouldn't it? As far as determining, you know, whether we could determine what the district court would do or whether it's finding was leaving us with a firm and definite conviction that an error had been made. Yes, I would admit that if it's a clearly erroneous standard entirely, that that would be tough. But I think at the very least, it's a mixed question of fact and law, but I mean, really the crux of what we're arguing here is a legal issue, which I think is, is the de novo review. But additionally, How about Heart Springs and Beer Nuts, and these are all cases from the 10th Circuit that found that these determinations are legal conclusions. I'm sorry, there are factual findings subject to clearly erroneous review. So what, what about those cases? How do you, how do you reconcile your position with those? So those are all trademark infringement cases. And that's really kind of the crux of what we're arguing here is that, What's the difference? Why would it be any difference in the cancellation proceedings? Why would that standard that the 10th Circuit has laid out be any different? What's the difference between those, these two kinds of cases? Yeah, so in, in a registration proceeding, you're really just looking at what's claimed in the applications and the registrations. Because in this case in particular, specifically, it's been claimed a standard wordmark, which is the broadest mark that can encompass all uses without respect to any particular font, color, style, anything like that. But if you're in an infringement case, you're looking at the actual use in the marketplace to determine whether that actual use is infringing on another mark. And, and actual use is going to be a lot more narrow than what's claimed in these applications and registrations when it's a standard wordmark. Did JBX file an intent, any intent to use in this case? JBX was a, it comes from Australia, so it was seeking extension of protection from, from what it obtained in Australia. And I see that I'm getting kind of close to time, so if, if I may reserve the rest for rebuttal. Judge Rossman has a question. I have a few more questions. You're the last case, so we're going to make sure you get to say a few more things. Go ahead. So this concerns just the general approach to the, to these 1071-B1 proceedings. As the briefing acknowledged, this is an unusual type of case to appear in our, in our circuit. I don't think anyone cited us to have precedential authority on that type of district court actions. Is that fair to say, that you haven't come across any case that, that has addressed 1071-B1 in our circuit? Yes. This is, and I believe our brief noted that we believe this is a case of first impression for this circuit. Yes. Okay. And so, can you help me understand how to reconcile two things? One is, your argument about what the law requires in these proceedings, which is, you stay within the four corners of the applications and registrations when it comes to the marks, the goods, and, and, and there's one more, right? Well, what is it? The marks, the goods, the, the products, and the degree of consumer care exercised.  Okay. So you stay within the four corners, yet 1071-B1 allows for you to submit additional evidence. The district court's the fact finder. It's not really an appeal of the TTAB. So how is, what does that mean? Does that mean that the new evidence is just, has to comply with the, with the first principle rule? Well, I think that the new evidence, it's kind of what occurred in this case here as well. As I said, the, the confining to the applications and registrations really only applies to the factors we noted. But if you're looking at the strength of the mark, the new evidence could come in in terms of that, like third party uses and enforcement efforts and stuff like that. That is some of the new evidence that would be considered that is outside of the applications and registrations. Okay. All right. Thank you. All right. Judge Rios, do you have anything else? Okay. We'll give you a little bit of time at the end. Thank you. I appreciate it. Good morning, your honors. May it please the court. My name is Laura Myers on behalf of Appellee JBX Proprietary Limited. I'd like to start by addressing some of the questions your honors have asked, because I want to make sure that we're all on the same page about what should apply here. With respect to what is the standard of review, as was noted by your honor, this circuit follows the majority view, which is that likelihood of confusion is a question of fact, subject to clearly erroneous review. Okay, that's true. But that does not apply here, where there is a legal error infecting the district court's factual determinations. And that's not even a trademark rule. Right? So this is the rule that says if you have a district court making an inherently factual determination that ordinarily would be reviewed for clear error, that yields when the district court's factual determination is infected by a threshold legal mistake. And your honor, we disagree on the first question you asked to opposing counsel respectfully as well, which we think it is an evidentiary issue, this consideration of the outside evidence, precisely as they characterized it in their opening brief, which was their second appeal issue. Okay, can I stop you just for a second to make sure that we're talking about things in sort of a sequence? So with respect to my first observation about your statement of the standard of review, do you agree that clear error, assuming that what we're dealing with is this inside-outside evidence threshold question, that if the district court's determination is violated, a threshold legal rule, we would not be on clear error review for the likelihood of confusion analysis? Do you agree with that? I do not agree with that because it does not infect the entire analysis. So the likelihood of confusion analysis is very fact-specific, and each factor is its own factual determination, and the overall likelihood of confusion is also its own overarching factual determination. So again, I disagree that it's a legal issue whether or not the evidence that was considered was improperly considered that would infect a particular factor. I also disagree that it would infect the overall analysis. That would still be a factual question subject to clear error review. And going back to the fundamental threshold question, which is this consideration of the marketplace evidence, we don't consider that to be a legal error. In fact, in trademark disputes, very few things are legal. The case law is all over the place talking about the fact that this is an inherently factual determination. With respect to the evidence, it's an evidentiary issue, which then this Court reviews for an abuse of discretion. Why is it an evidentiary issue? I think this was how I was originally thinking about the case, and then I've convinced myself I'm wrong. So maybe you can convince me to go back to how I was originally thinking about it. It seems that in this case, to understand this as a pure evidentiary question that's subject to ordinary abuse of discretion doesn't make a whole lot of sense, irrespective of the trademark context. It's about how we as an appellate court review factual findings that are infected by legal errors. And that's not an abuse of discretion standard. That's a standard that requires us to remand in the ordinary course because we really can't be sure how the district court would have done its factual determination had it known what the correct law was unless there's only one resolution of the factual issue. And it seems to me that that's where your argument needs to go, right, that if you are able to persuade us that there's only one resolution of the factual issue, then maybe that you prevail. But I'm not understanding why this is an evidentiary question that's reviewed for relevance and so forth. It just doesn't seem to fit. And, you know, so again, putting aside the question of the evidentiary issue, which we think that is the standard because it is a question of which evidence should have been considered or not considered with respect to these elements. But answering Your Honor's first question, which is if the Pullman standard applies to your last point there is that if there's only one outcome, there's no reason to remand. And that would be the situation we'd be in because as the panel noted, the district court weighed these factors in the other side's favor already. So similarity of the marks was weighed in its favor, manner of marketing and products were weighed in its favor. And I'll back up for a second. The degree of care is not one of the factors that you cannot consider outside evidence on. The BB hardware case out of the Supreme Court identifies what the factors are. The factors are similarity of the marks, similarity of the products, and channels of trade. Now in this circuit, channels of trade and similarity of the products are combined in one factor. So degree of care is specifically one that the BB hardware says that you can consider outside evidence. So we are really talking about similarity of the marks and similarity of the products and manner of marketing, which is that combination of products and channels of trade. So we collapse it into one.  So those are the two factors that are issue with respect to the outside evidence. Degree of care does not factor in with respect to that. So it would have been fine to look at outside evidence with respect to that factor. The issue with respect to similarity of the marks and similarity of the products and manner of marketing, as I was saying, is that they were already weighed in the other side's favor. So the only- I think their position is that they could have been made more or they could have weighed more. And so this is an inherently discretionary determination that weighing is an inherently discretionary determination that we can't be put in the position of re-weighing the factors. Well, and precisely so, the only other outcome would be to weigh it higher. So, and you know, and I would also say that the district court didn't say anything about the weight it was providing to similarity of products and manner of marketing. All it said with respect to weight was that it did not agree with the other side that it should weigh, quote, overwhelmingly in its favor. Basically, you know, appellant's argument equated with this overwhelming weight argument that it was essentially a controlling factor. And the district court disagreed, which is proper, because there was no case law saying that similarity of products and manner of marketing should be a controlling factor. An appellant certainly doesn't cite any. Trademark cases across the board stress typically similarity of the marks or strength of the  This circuit stresses similarity of the marks, which is precisely how the district court got to the decision that it did, because it relied very heavily on the addition of JBX to those two marks at issue. And you know, I don't want to gloss over that, because that's very important. And when we look at the split decision here, it's clear that that is what carried the day for the district court, was the addition of the JBX in the two marks at issue. And JBX is our company name. There's no dispute about that. The other side wants to make an issue out of the fact that the district court waffled on whether it was a housemark or not. That question is irrelevant. In this circuit, the Alfwear decision that we cited specifically talks about how the addition of a housemark or a trade name can itself be the reason that there is no confusion. Now, we think that JBX is a housemark. All that a housemark means is that it's the company name associated with various brands. So think of General Mills and Cheerios. General Mills is the housemark. Cheerios is the brand and the trademark. In our case, JBX is most certainly our company name and housemark. And Bio Island is the brand. But it doesn't matter because it's certainly a trade name because it's the company name. And this circuit has precedent saying that that enough is a loan to find no confusion. And that's well established in McCarthy and other leading treatises on trademark law. So that is really what carried the day for the district court. It was not this outside evidence. So I would like for you to explain how the record supports what you're saying. So I think framed in terms of or inserted into the legal frame, I think here's where we are. And please correct me if I'm wrong. Really the question is no one seems to disagree that this is a case of first impression in terms of this 1071B1 inside outside. And that the rule is that as to those three those three types of factors that we discussed, similarity of the mark, similarity of the products, manner of marketing, that has to stay within the four corners of the registration applications. Do you agree with all that so far? That's correct. That is how it is done in other 1071B cases. So the issue here is, did the district court err by not following that rule, which, to be fair, we have not yet had an occasion to pass on in our circuit. If we say that the district court did err because of the nature of the inherently factual findings here, don't we have to be able to say that the record permits only one resolution of the factual issue? You agree with that under Pullman? Under Pullman, correct. That's the standard. Okay. And so what I'm struggling with is when we look at what the district court did, if the district court said, gosh, you know, this is so different. These two marks are so different because of the bookends of the JBX mark, that seals the deal for me. I would have an easier time agreeing that there is only one resolution of the factual issue. But the district court included other things. It said the inclusion of the mark, and then it was focusing on the use by the moms and kids and the labels and so forth. So help me understand how, notwithstanding that the district court called out three specific things, really we should be focusing on one thing. Yes, Your Honor. And you're saying to one portion of the opinion, and I'd like to, you know, sort of draw the attention to the other sections, which I think make it clear that what the court relied on was, in fact, that use of the JBX, as opposed to that reference in the elements that you identify where they refer to the mothers and children. So if we look at that, that's in the discussion of the similarity of the marks, the overall weighing of the factors, and then importantly, the overall conclusion on the likelihood of confusion. So specifically, we look at the decision at Appendix Volume 3, page 873, paragraph 57. The district court explained that, quote, by including JBX's brand name, which looks and sounds unlike Island on these two marks, any likelihood of confusion is, quote, significantly decreased. Then it goes on to say in the following page on paragraph 58, that the significantly reduced likelihood of confusion that it had just said was attributed to the use of JBX, as to the JBX Bio Island and Bio Island JBX marks supports their USPTO registration as sought by JBX. And then in the court's ultimate conclusion, which is in the Appendix Volume 3 at page 874, the district court stated, the inclusion of JBX in the JBX Bio Island mark and Bio Island JBX mark add an important distinguishing element that makes any confusion with the Island marks sufficiently less likely to allow their registration. So reading the opinion as a whole, I think it's very, very clear that the addition of JBX in these marks is the reason why they were allowed. And the split decision itself shows that the weighing of the other factors were not determinative in the ultimate factual determination of likelihood of confusion, that ultimate weighing of the factors. The fact that the TTAB was affirmed on Bio Island and Bio Island, two words, shows that regardless of the district court's weighing of similarity of the marks and similarity of the price and manner of marketing, it still found that confusion was too likely with respect to those marks. So what made the difference was the addition of JBX. And again, the court did weigh those factors, similarity of the marks and similarity of the price and manner of marketing in JBX's, I'm sorry, in Island's favor. Can I ask you one question to clear something up? From the earlier cases where we weren't sure everything was clear on the record, Judge Rossman asked you about the Pullman standard. And I couldn't tell whether you were conceding that that was the proper standard or if you were accepting her standard for purposes of your argument. Would you, if you're conceding it, that's great, I'm good with it, but. Yeah, no, I think the problem with the Pullman standard is that I don't agree with the fundamental premise that there's been a legal error, which would cause the fundamental, cause it to apply. Or that factual determinations were made in error based on a incorrect legal standard. I think the consideration of the outside evidence is an evidentiary issue. They moved to exclude that evidence. Their appeal's second issue was that that was an abuse of discretion, the denial of that exclusion, and that is subject to an analysis which determines whether or not it had a substantial impact on the outcome. So the short answer is, you're not conceding it? I'm not conceding it unless it is a, determined that the consideration of outside evidence is a legal issue, and then it would apply, I agree, and then we would be able to. I'm sorry, I have to follow up. Sure, go ahead. Sure. I thought that when we were sort of charting through what everyone was at least on the same page about so far, you agree that this 1071B1 case is an issue of first impression, and we have not passed on this outside-inside evidence issue, and you agree that as to those three categories, the Supreme Court has instructed that you have to look at the four corners of the mark. I thought you agreed that that was the rule, and then I thought you agreed that the district court did that a little bit as to some of the factors, but then you have your ultimate position that maybe that doesn't matter at the end of the day. Correct. I agree with all of that.  I mean, underlying this all, I still want to get to a fundamental, and I know I'm over. Because this is a case of first impression in this circuit, I want to make sure that this is very, very clear, that even though this is a 1071B appeal, you still follow the fact that this is a question of fact subject to clearly erroneous review. And all the circuits that they cite, so Federal Circuit, Second Circuit, those are circuits that follow the minority review, I mean, minority standard. That doesn't make any sense to me. Maybe I don't understand it, so help me with this. How can clear error review apply? Forget 1071, you know, the specific context of this trademark case. How can clear error review apply if there is an inherently factual determination that the district court has to make that's ordinarily reviewed for clear error, but the factual determination is corrupted by a legal mistake? How can clear error review have anything to do with this case at that point? So, Your Honor, the actual factual determination that the district court made was that the factors weighed in the other side's favor. What they are complaining about is the weight, and they don't have any authority to support the fact that there's a legal standard out there that the similarity of products and manner of marketing should have weighed overwhelmingly in their favor. They don't cite any case law talking about overwhelmingly. The district court did, in fact, weigh it in their favor. So that factual determination is not in error, and it's not incorrect. It was the way that it should have went. We didn't even dispute that at trial. We said the factors should have weighed in their favor. So there is no error with respect to that particular factor. With respect to similarity of the marks, again, their complaint is weight. That factor, again, weighed in their favor. But the district court's determination that the similarity only weighed slightly in their favor was not based exclusively on this outside evidence. Sure, they mentioned it, but in their actual opinion, they said that it did not have a major outcome, they weren't major distinctions, and it pointed out that it has to weigh similarities over differences. The crux of the district court's actual decision on similarity was based on the use of bio and JBX as the initial words. That doesn't consider outside evidence. That's within the four corners of the application and the registration, and its decision based on that, due to the fact that they were the leading words in the mark, is supported by the case law. We cited the Trek bicycle case, which talks about the first word in a mark is typically the most dominant portion of the mark. So the similarity of the marks factor, again, it's a question of weight, and there's other evidence that support the district court's decision, and similarity of manner of marketing, we're getting down to whether or not they should have weighed, the court should have weighted overwhelmingly, and we have no law saying that that's the standard that they didn't follow that would impose Pullman and get us into this review that we've been talking about. Okay. Judge Rodriguez? Judge Rossman? Okay. Thank you, counsel. Thank you. We'll give you, she was over a little bit. She was over a minute. Okay, we'll give you three minutes. Please square things up between the two of you. Thank you. Just briefly, I want to go back to the discussion about that just occurred. I think the different factors also carry different weights, which I think is important to consider too in terms of similarity of the marks carrying more weight. And so if there was a misstep in the analysis regarding a factor such as similarity of the marks which carries more weight, I think, again, that's something that could have changed the entire analysis. I also would like to address the citation to the B&B hardware case. That case is distinguishable here. It's not really standing for the proposition that evidence, regarding what evidence can be considered in terms of the degree of care exercised by the consumer. That case involved a concept of issue preclusion involving basically dueling trademark infringement proceedings and also TTAB proceedings. So I think that case is distinguishable. I'd also- Let me ask you about that. So if you have one of these dual cases where there's an infringement claim and a, what's the term I'm looking for? The kind of claim you have. A TTAB opposition or cancellation proceeding? Right, a cancellation proceeding. I mean, the court in that case is going to, the standard is going to be clear error, isn't it? Sorry, the court in a trademark infringement case? Is that what you're asking? Yeah, well, it's a dual case. You're not going to apply different standards to the different claims, are you? That's an interesting question. Honestly, to be frank, I'm not entirely sure what that would look like, but I think that's not really an issue here since we don't have dueling trademark infringement. It's an issue only insofar as that at least some people might think that it would be confusing to have two different standards if they could end up in a dual proceeding. Yes, I would agree that I think it could be confusing under that circumstance, but as I noted, since we don't have those dual proceedings here, I don't think that that's something that we need to be too concerned about. With my last 20 seconds here, I just would like to note that the inclusion of JVX really doesn't carry much weight, especially where it's undisputed that JVX has not entered the U.S. marketplace yet. So it's not going to have, even if it is a trade name, it's not going to have any significance for the U.S. consumer where it hasn't entered the U.S. marketplace. I see that my time is up. Before you sit down, let's make sure we don't have any follow-ups. I'm on that. Judge Otis? Okay. Thank you, Counsel. Your case is submitted. Counselor excused. We'll be in recess until tomorrow morning at 9 a.m.